UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN BLAND,

                Plaintiff,

- against -

EVA AIRWAYS CORPORATION,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/14

**MEMORANDUM**
**OPINION & ORDER**

11 Civ. 5200 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Plaintiff John Bland brings this action against defendant EVA Airways Corporation ("EVA"), seeking damages under the Montreal Convention for injuries he sustained during an EVA flight. (Cmplt. (Dkt. No. 1)) The parties have cross-moved for reconsideration of this Court's March 11, 2013 order (Dkt. No. 21) denying the parties' cross-motions for summary judgment. For the reasons stated below, the cross-motions for reconsideration (Dkt. Nos. 24, 28) will be denied.

## BACKGROUND[1]

       The factual background concerning Bland's action is fully set forth in this Court's March 11, 2013 order and will not be repeated here. In summary, on February 29, 2009, Bland sustained injuries to his left eye while aboard an EVA flight from Los Angeles, California to Taipei, Taiwan. (Dkt. No. 21 at 1) After Bland's flight landed in Taipei, and while the plane was taxiing to the gate, Bland was struck in the left eye by a shopping bag held by a fellow passenger. (Id. at 1-2) The passenger had been sitting across the aisle from Bland during the flight but apparently stood up while the plane was taxiing to the gate. (Id. at 2)

---

[1] Familiarity with this Court's March 11, 2013 order is assumed.

The parties dispute whether the passenger holding the shopping bag removed it from the overhead compartment just before Bland was struck in the eye. (Id.) At his deposition, Bland testified that he did not see the passenger remove the bag from the overhead compartment. (Id.) Bland further testified that he is "assuming" that the passenger took the bag out of the overhead compartment. (Id.)

The parties likewise dispute whether members of the flight crew observed the passenger stand up and remove items from the overhead bin while the plane was taxiing to the gate. (Id. at 3) A flight attendant was seated approximately eight rows in front of Bland, facing the passengers, but there is no evidence that the flight attendant interacted with Bland's fellow passenger either before or after the bag struck Bland's eye. (Id.) There is likewise no evidence as to how long the passenger holding the bag was standing before the bag hit Bland's eye. (Id.)

Bland sustained a detached retina in his left eye, for which he underwent surgery. (Id. at 4)[2]

## I.   PROCEDURAL BACKGROUND

The central dispute in the parties' summary judgment motion papers was whether an "accident" had occurred within the meaning of the Convention for the Unification of Certain Rules for International Carriage by Air[3] (known as the Montreal Convention) – as interpreted by the Supreme Court in Air France v. Saks, 470 U.S. 392, 405 (1985). Such a finding is a prerequisite for carrier liability under the Convention.

---

[2] The parties dispute whether Bland's detached retina was proximately caused by the incident on the EVA aircraft. (Compare Pltf. R. 56.1 Stmt. ¶¶ 15-16 with Def. R. 56.1 Resp. ¶¶ 15-16) For purposes of summary judgment, however, Defendant conceded causation. (Def. Sum J. Br. (Dkt. No. 11) at 4-5)
[3] Convention on the Unification of Certain Rules of International Carriage, May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734.

In its March 11, 2013 order denying the parties' motions for summary judgment, this Court noted that "the Second Circuit and other courts in this district have consistently found that a compensable 'accident' occurs only where there is some causal connection between the event causing harm or loss and the operation of the aircraft or airline." (Dkt. No. 21 at 7) Because "there are a multitude of factual issues concerning the circumstances of Bland's injury and the airline's role in that injury," this Court concluded that neither side was entitled to summary judgment. (Id. at 9)

Both sides have moved for reconsideration of that order. (Dkt. Nos. 24, 28) Bland argues that this Court erred in concluding that his injury must be causally related to the operation of EVA's aircraft or airline to constitute an "accident" under the Convention. (Pltf. Reconsideration Br. (Dkt. No. 28) at 4-6) Bland further argues that – even if a causal connection is required – the evidence that a passenger stood up during taxiing to the gate is sufficient to demonstrate causation. (Pltf. Reconsideration Reply Br. (Dkt. No. 31) at 5-6)

EVA argues that it is entitled to summary judgment because Bland did not proffer sufficient evidence to create an issue of material fact as to whether there is a causal connection between his injury and the operation of EVA's airline or aircraft. (Def. Reconsideration Br. (Dkt. No. 27) at 2-6)

## DISCUSSION

### I.   MOTION FOR RECONSIDERATION STANDARD

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of

scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'" Id. (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))) (second alteration in original). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." Id.

4

## II. ANALYSIS

### A. Causal Connection

Arguing that "no Second Circuit court has ever mandated the finding of a causal connection," Bland argues that this Court erred in concluding that a passenger's injury must be causally related to the operation of an airline or aircraft to constitute an "accident" under the Convention. (Pltf. Reconsideration Br. (Dkt. No. 28) at 4-6) In support of this argument, Bland relies on the same cases (see id. at 4-8) that he relied on at summary judgment. (See Pltf. Sum. J. Br. (Dkt. No. 15) at 4-10) This Court addressed these cases – Magan v. Lufthansa German Airlines, 339 F.3d 158, 162 n.3 (2d Cir. 2003); Wallace v. Korean Air, 214 F.3d 293, 299 (2d Cir. 2000); Fishman v. Delta Air Lines, Inc., 132 F.3d 138, 143 (2d Cir. 1998); Fulop v. Malev Hungarian Airlines, 175 F. Supp. 2d 651, 658 (S.D.N.Y. 2001) – in its summary judgment opinion. The Court explained in that opinion why these cases indicate that there must be some causal connection between the event causing harm or loss and the operation of the aircraft or airline. (Dkt. No. 21 at 7-8) In arguing that the Court's interpretation of these cases is incorrect, Bland is merely relitigating an issue already decided by the Court. That is not an appropriate basis for a reconsideration motion.[4] See Davidson, 172 F. Supp. 2d at 461; see also In re CRM Holdings, Ltd. Sec. Litig., No. 10 Civ. 00975 (RPP), 2013 WL 787970, at *4 (S.D.N.Y. Mar. 4, 2013) (denying motion for reconsideration where, in its prior order, "the Court discussed many of the same cases upon which Plaintiffs now rely in their motions for reconsideration"). Accordingly, Plaintiff's motion for reconsideration of this issue will be denied.

---

[4] Bland's reliance on the concurring opinion in Wallace (see Pltf. Reconsideration Br. (Dkt. No. 28) at 5-6) is likewise misplaced. The holding of the case is in the majority decision.

5

### B.   Material Issue of Fact

#### 1.   EVA's Motion

EVA argues that its motion for summary judgment should have been granted, because Bland "failed completely to come forward with admissible evidence ... prov[ing] a causal connection between the event and the operation of the aircraft or airline." (Def. Reconsideration Br. (Dkt. No. 27) at 1, 3)  EVA also claims that this Court improperly placed a burden on EVA to come forward with evidence in support of its motion.  (Id. at 1, 6-7)

It is, of course, true that

> [w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant [at summary judgment] to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. . . . In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.

Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).

In considering whether a genuine issue of material fact exists, the Court "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  However, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotations and citations omitted).  Instead, the non-moving party must "offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).

Here, Bland testified at his deposition that the plane was taxiing to the gate at the time he was injured. (Bland Dep. Tr. 48) He had been sleeping, but awoke when the plane touched the ground. (Id. at 49) Less than a minute later, Bland was struck in the eye by the bag. (Id.) Bland stated that he "recall[ed] an impact to [his] eye . . . and immediately seeing someone there with a bag." (Id. at 53) Another passenger was "standing over [Bland], and [that passenger] was about to close the [overhead] compartment." (Id. at 51) This passenger had been seated in the aisle seat opposite from Bland, in the same row, during the flight. (Id. at 51-52) Bland testified that he knew the bag had come from the overhead compartment because the other passenger "had the compartment open." (Id. at 51, 56)

Bland also testified that a flight attendant was seated eight rows in front of him -- facing the passengers -- when Bland was struck with the bag. (Id. at 59-61, 68) The flight attendant did not have any interaction with the standing passenger, nor did she respond when Bland was struck with the bag. (Id. at 58, 66, 68)

"[C]redit[ing] all factual inferences that could rationally be drawn" from this testimony, Cifra, 252 F.3d at 216, there is a genuine issue of material fact as to whether an "accident" – within the meaning of the Convention – occurred. A reasonable juror could infer from Bland's testimony that Bland's fellow passenger from across the aisle stood up while the plane was taxiing to the gate in order to retrieve a bag from the overhead compartment. It is also a fair inference that – in retrieving the bag from the overhead compartment – the passenger allowed the bag to swing down and strike Bland in the eye. In sum, a reasonable juror could conclude from Bland's testimony that his injury was caused by an unexpected or unusual event connected to the operation of the aircraft or airline: a passenger standing up during taxiing,

7

opening an overhead compartment, removing a bag while the plane was still in motion, and allowing the bag to swing down and strike another passenger, causing serious injury.[5]

A reasonable jury could also infer from Bland's testimony that the flight attendant – who was seated facing Bland, just a few rows away – saw the passenger stand while the plane was taxiing to the gate and retrieve a bag from the overhead compartment, but did not instruct the passenger to be seated. Although these events might have happened quickly, it is a jury question whether the flight attendant could have and should have acted to stop the passenger from standing and retrieving the bag from the overhead compartment.

In addition to Bland's testimony on this point, this Court may also "take judicial notice of the regulations of federal administrative agencies." United States v. Bradford, 160 F.2d 729, 731 (2d Cir. 1947). Federal Aviation Administration ("FAA") regulations require airlines to ensure that "the 'Fasten Seat Belt' sign shall be turned on during any movement on the surface [of the runway] . . . for each landing." 14 C.F.R. § 121.317(b). FAA regulations also require that "[e]ach passenger . . . fasten his or her safety belt about him or her and keep it fastened while the 'Fasten Seat Belt' sign is lighted." Id. § 121.317(f). FAA regulations further provide that "passenger[s] shall comply with instructions given [to them] by a crewmember regarding compliance" with these regulations. Id. § 121.317(k).

Under the FAA's regulations, the EVA flight attendant had the authority to demand that the passenger be seated while the plane was taxiing to the gate. In considering whether Bland's injury is causally related to the operation of an airline or aircraft – so as to

---

[5] In arguing to the contrary, EVA ignores the fact that circumstantial evidence is entitled to as much weight as direct evidence at trial. While Bland did not see the passenger remove the bag from the overhead compartment – and thus there is no direct evidence of that fact – there is circumstantial evidence that Bland's fellow passenger retrieved a bag from the overhead compartment as the plane was taxiing to the gate, and that in doing so he struck Bland in the eye.

constitute an "accident" under the Convention – the jury will be permitted to consider the flight attendant's authority, under FAA regulations, to instruct the passenger to be seated.[6]

Because Bland has produced sufficient evidence to raise a genuine issue of material fact as to whether his injury was causally related to the operation of EVA's airline or aircraft, EVA's motion for reconsideration will be denied.[7]

## 2. **Bland's Motion**

Bland argues that the mere fact that a passenger stood up while the plane was taxiing, in violation of FAA regulations, is sufficient, as a matter of law, to establish causation and to demonstrate that an "accident" occurred under the Convention. (Pltf. Reconsideration Reply Br. (Dkt. No. 31) at 5-6) Bland further asserts that the flight attendant's ability to observe

---

[6] EVA argues that the "'taxiing' aspect of [the] scenario [here] has no connection with the event that caused plaintiff's injury – his being hit in the eye by a bag being carried by another passenger." (See Def. Reconsideration Br. (Dkt. No. 27) at 5) This argument "neglects the reality that there are often multiple interrelated factual events often combine to cause a given injury. . . . [A]ny one of these factual events or happenings may be a link in the chain of causes and – so long as it is unusual or unexpected – could constitute an 'accident' under Article 17." Olympic Airways v. Husain, 540 U.S. 644, 653 (2004). "Indeed, the very fact that multiple events will necessarily combine and interrelate to cause any particular injury makes it difficult to define, in any coherent or non-question-begging way, any single event as the 'injury producing event.'" Id. (emphasis in original).

Taxiing is undeniably an operation of an aircraft, and – as indicated by the FAA regulations discussed above – it is an operation that presents unique risks. Here, a fact-finder might conclude that the passenger who stood up lost control of the bag because of the movement of the plane. In any event, this Court does not agree that the taxiing of the plane is irrelevant to issues of liability.

[7] EVA's argument that this Court improperly shifted the burden of proof to EVA (see Def. Reconsideration Br. (Dkt. No. 27) at 1, 6-7) ignores what the Court said in its summary judgment opinion about both sides' factual presentations. The Court ruled that neither side had offered sufficient facts about the circumstances of Bland's injury to be entitled to judgment as a matter of law. (Dkt. No. 21 at 9) EVA did not rebut Bland's factual showing, in part because it offered no evidence as to what the flight crew did after Bland's fellow passenger stood up to retrieve a bag from the overhead compartment. (Id.) Because of deficiencies in the parties' factual presentations, "there are a multitude of factual issues concerning the circumstances of Bland's injury and the airline's role in that injury." (Id.)

and address the passenger's conduct is irrelevant to a determination of whether an "accident" occurred. (Pltf. Reconsideration Br. (Dkt. No. 28) at 8-11) According to Bland, such an analysis improperly considers whether the flight attendant acted "reasonably," thereby imposing a "negligence" standard that contravenes the Convention's "strict liability" scheme. (Id. at 9) Bland's argument misapprehends the purpose of the inquiry concerning the flight attendant's conduct.

Evaluating the flight attendant's opportunity to act does not impose a new requirement that the carrier must have had notice of a risk and an opportunity to prevent a passenger's injury in order to be held liable under the Convention. Rather, the purpose of the inquiry is to determine whether the flight attendant's act or omission was the "injury-causing event," in order to determine whether an "accident" occurred. The focus of the inquiry is on "the nature of the event which caused the injury rather than the care taken by the airline to avert the injury." Saks, 470 U.S. at 407 (emphasis in original).

Courts in this Circuit have found a flight crew member's opportunity and ability to act relevant, for example, in determining (1) whether a causal connection existed between a passenger's injury and the operation of the airline or aircraft, see Fulop, 175 F. Supp. 2d at 657 ("The larger the role of the airline in the causal chain, and the greater the knowledge and involvement of its personnel and operations in bringing about the harmful event, the more likely it is that liability will be found. Conversely, as the causal balance shifts towards acts and conditions that are independent of the knowledge or will of the carrier, or not associated with the operation of the aircraft or airline nor arising from risks characteristic of air travel, and instead are more unique to the passenger alleging injury, the lesser the claimant's probability of recovery."), and (2) whether the injury-causing event – the flight crew member's conduct – was

"unusual or unexpected." See Fishman, 132 F.3d at 143 ([A] claim . . . allege[s] an 'accident' if it arises from some inappropriate or unintended happenstance in the operation of the aircraft or airline. Thus, an injury resulting from routine procedures in the operation of an aircraft or airline can be an 'accident' if those procedures or operations are carried out in an unreasonable manner. . . . [In such circumstances, the conduct is] not expected, usual, normal, or routine.") (emphasis in original); Fulop, 175 F. Supp. 2d at 665 ("This Court is not persuaded, however, that a carrier's alleged violation of its own operations and procedures in handling an emergency when it did occur and the alleged attendant delay in obtaining adequate medical care that may ensue when the occasion arises, could objectively be deemed normal, usual or expected. . . . Any major deviation from a standard articulated in recognized practices and procedures represents the exceptional case – the unusual or unexpected happening. . . . [T]he ordinary traveler reasonably would expect that – as the normal, usual and expected response to such urgencies, and as a fair balancing of interests and risks characteristic of air travel – in handling life-threatening exigencies, airlines rendering services as common carriers would be particularly scrupulous and exacting in complying with their own industry norms, internal policies and procedures, and general standards of care.").

In sum, the flight attendant's ability to observe and prevent the other passenger from standing up and retrieving the bag from the overhead compartment is relevant to a determination of whether there is a causal connection between Plaintiff's injury and the operation of the aircraft, and thus an "accident" for purposes of the Convention. Similarly, the flight attendant's ability to observe and prevent the other passenger's misconduct is relevant to a determination of whether the flight attendant's failure to act was "unusual or unexpected."

Based on the evidence submitted by the parties, this Court cannot rule as a matter of law that the events here are "unusual or unexpected," or sufficiently connected to the operation of the airline and Bland's injury so as to constitute an "accident" under the Convention. Cf. Magan, 339 F.3d at 163 ("[Although] the definition delineated in Saks will not always be susceptible to easy application[,] . . . [t]runcating the definition, or ignoring portions that complicate the analysis of a particular set of facts, is no solution.").

The Second Circuit has made clear that the determination of whether an "accident" has occurred is a "matter of fact." (Id.) Plaintiff concedes that "[i]n cases with contradictory evidence, it is for the trier of fact to decide whether an Article 17 accident has occurred." (Pltf. Reconsideration Br. (Dkt. No. 28) at 3) This Court explained in its summary judgment opinion, and has repeated to a lesser extent here, the many unresolved factual questions that preclude a ruling as a matter of law. Accordingly, Plaintiff's motion for reconsideration will be denied.

## CONCLUSION

For the reasons stated above, the cross-motions for reconsideration are denied. The Clerk of the Court is directed to terminate the motion. (Dkt. No. 24)

Trial of this matter will begin on May 5, 2014, at 9:30 a.m., in Courtroom 705 of the Thurgood Marshall United States Courthouse. The joint pretrial order, motions in limine, and proposed voir dire and requests to charge are due on April 14, 2014. Any responsive papers are due April 23, 2014.

Dated: New York, New York
      March 24, 2014        SO ORDERED.

                                                        Paul G. Gardephe
                                                      United States District Judge